Fairway Manor, Inc. *v.* Board of Commissioners of Summit County; City of Akron, Appellant; County of Summit, Appellee.

[Cite as Fairway Manor, Inc. *v.* Bd. of Commrs. of Summit Cty. (1988), 36 Ohio St. 3d 85.]

(No. 87-952—Decided April 13, 1988.)

86

*Max Rothal,* director of law, and *Pamela A. Walker, Thompson, Hine & Flory, Leslie W. Jacobs* and *James B. Niehaus,* for appellant.

*Vorys, Sater, Seymour & Pease, Duke W. Thomas* and *Scott M. Doran,* for appellee.

DOUGLAS, J. A municipally owned public utility is exempt from restriction or regulation by the General Assembly. Section 4, Article XVIII, Ohio Constitution; *Swank* v. *Shiloh* (1957), 166 Ohio St. 415, 2 O.O. 2d 401, 143 N.E. 2d 586, paragraph one of the syllabus. The degree of control which the courts will exert over such public utilities is

strictly limited to protecting *residents of the municipality* from the imposition of rates which are unreasonable or which discriminate among such residents, taking into account their situation and classification. *State, ex rel. Mt. Sinai Hosp.,* v. *Hickey* (1940), 137 Ohio St. 474, 477, 19 O.O. 159, 161, 30 N.E. 2d 802, 804.[4] The question presented by the instant cause is: To what extent will a court review the rates charged by a municipally owned public utility to an extraterritorial purchaser when those rates are contained in a contract negotiated between the parties?

Appellee and the court of appeals both rely on *Western Reserve Steel Co.* v. *Cuyahoga Heights* (1928), 118 Ohio St. 544, 161 N.E. 920, for the proposition that a rule against discrimination applies to rates fixed by contract. In so construing *Western Reserve,* a major distinguishing feature is overlooked. In that case, the village of Cuyahoga Heights, which purchased its water from the city of Cleveland, unjustly discriminated against one of its own resident consumers. This court held that "[i]t is the duty of a municipality which undertakes to supply water *to its public* to do so without discrimination. * * * The municipality cannot absolve itself of such duty by a contract to which the person sought to be discriminated against and to whom it owes the duty is not a party." (Empha-

sis added.) *Id.* at paragraph one of the syllabus.

By contrast, the case before us does not involve the duty of a municipality to its own public. The dispute herein is between two separate and distinct governmental entities, a municipality and a county. No question is presented of a municipality's duty to its own residents. Therefore, *Western Reserve* is inapposite.

Courts must presume that the language of a contract between competent persons accurately reflects the intentions of the parties. *Kelly* v. *Medical Life Ins. Co.* (1987), 31 Ohio St. 3d 130, 31 OBR 289, 509 N.E. 2d 411, paragraph one of the syllabus. The purpose of this presumption is to protect a right considered basic in our society: the right to freely contract. A necessary means of preserving this right is the long-standing tradition of judicial reluctance to reform or rescind a contract absent a compelling reason to do so.

In support of its contention that the rate in question is discriminatory, appellee emphasizes two points: the difference between the rates charged to the city of Tallmadge and those charged to appellee, which are both wholesale bulk water purchasers, and the absence of any additional expense or difficulty encountered by appellant in supplying water to appellee as compared to Tallmadge. Thus, appellee

---

[4] We are aware that this rule is set forth in somewhat broader language in the decision cited as authority therefor. Specifically, the court stated that "[t]he only general restraints imposed on the distribution of water are that the rates charged be reasonable and that there be no unjust discrimination among the customers served, taking into account their situations and classification." *State, ex rel. Mt. Sinai Hosp.,* v. *Hickey* (1940), 137 Ohio St. 474, 477, 19 O.O. 159, 161, 30 N.E. 2d 802, 804. However, it is clear from the context of the case that this rule was restricted to a municipality's distribution of water among its own residents. The ordinances under review in *Mt. Sinai* were concerned solely with water distribution within the territorial limits of the municipality in question. We believe the above-quoted rule must be interpreted within the context of the facts of that case.

contends, Tallmadge and appellee are similarly situated customers charged different rates for no logical or equitable reason. Therefore, the difference in rates constitutes impermissible discrimination. We cannot agree.

Where water rates are set forth in a contract, the fact that the rates contained therein are higher than those charged to similarly situated customers in the same class does not constitute a basis for judicial reformation of the contract. In such cases, it will be presumed that the higher rates were arrived at through the normal give and take of contractual negotiation. The lack of any cost differential to the seller does not affect the validity of the contractual rate. Even where no factor exists which would justify a difference in the rate charged, the court must leave the parties with their bargain.

If appellee is dissatisfied with the rates charged by appellant, appellee must be reminded that it entered the bargaining process freely and without duress. The trial court specifically found that appellee brought to the bargaining table persons who were qualified to exercise informed judgment in the negotiation of this particular contract.

Given these facts, this court will not interpose its judgment by rescinding or even reforming the contract. This position stems primarily not only from the belief that the parties should live with their bargain, but also from the realization that no other course of action is reasonably practicable. Our review of the possible alternative approaches to this case has compelled us to conclude that those approaches are completely unworkable, as will be seen from the following discussion.

Appellee's proposed solution, affirmance of the judgment of the court of appeals, is unacceptable. We cannot endorse the holding of the appellate court that discrimination in rates may not be based on the value of the service to the customer. The customer's desire and need for the product is always a factor in determining price. There is nothing inherently unfair in permitting this factor to be utilized in the negotiation process. Nor do we agree with the reasoning of the appellate court that the difference in rates may be justified only by a difference in the cost of supplying the service. Many other factors may justify a difference in rates. But where a particular rate is fixed by contract, it is for the parties, not the courts, to determine the rate to be charged. In such matters, courts will presume the wisdom of the bargain and uphold the contract.

An order remanding this cause, yet again, to the trial court would certainly serve no useful purpose. The trial court has already found that the contract in question was entered into freely and without duress. No other evidence could conceivably be relevant.

But the real dilemma presented by the court of appeals' disposition of this cause is its practical implications. By reversing the trial court's order upholding the contract, the appellate court necessarily struck down the contract, or at least that part of the contract which set forth water rates. Included in the judgment of the court of appeals was an order remanding the cause to the trial court "for further proceedings according to law on the other relief sought by * * * [appellee]." A question arises as to the course of action the trial court is expected to take in the face of such an order. Obviously, the court of appeals meant that the trial court should enter judgment for appellee and proceed to consider what relief is appropriate.

If the trial court enters judgment for appellee, then what relief is available? Appellee prayed that the "writ-

ten agreement of May 19, 1979, be ordered cancelled and rescinded, that the Court grant a preliminary and permanent injunction enjoining * * * [appellant] from terminating water service to * * * [appellee], and that the Court order the parties to abide by the terms of the [previous] May, 1972, water agreement until such time as a reasonable, nondiscriminatory contract is negotiated by the parties in accordance with the final order of the Court and for any further relief the Court deems necessary and proper."

Basically, appellee is asking that appellant be ordered to supply water to appellee under the terms set forth in the 1972 contract until a new, acceptable contract (*i.e.,* acceptable to appellee) can be executed. The end result would be that appellant will be forced to supply water to appellee on terms other than those bargained for by the parties. This result cannot be countenanced.

Municipally owned public utilities have no duty to sell their products, including water, to extraterritorial purchasers absent a contractual obligation. *State, ex rel. Indian Hill Acres, Inc.,* v. *Kellogg* (1948), 149 Ohio St. 461, 37 O.O. 137, 79 N.E. 2d 319, paragraph three of the syllabus. Even where there is a contract, but the contract provides no termination date, either party to the agreement may terminate it upon reasonable notice. *Grandview Heights* v. *Columbus* (1963), 174 Ohio St. 473, 23 O.O. 2d 117, 190 N.E. 2d 453, paragraph two of the syllabus. Thus, it can be seen that a municipality does not assume a duty to continue supplying water in perpetuity to extraterritorial customers merely by virtue of having once agreed to supply it. This court has further held that the General Assembly is without power to require a municipality to furnish water to noninhabitants

or to limit the price the municipality may charge for such service. *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313, 4 O.O. 2d 369, 148 N.E. 2d 221, paragraph two of the syllabus. The municipality has the sole authority to decide whether to sell its water to extraterritorial purchasers. *Indian Hill Acres, supra,* paragraph two of the syllabus.

By granting appellee's prayer for relief, the trial court would be terminating the 1979 contract and forcing appellant to sell under the terms of the 1972 contract. This it cannot do. By terminating the 1979 contract, the court would absolve appellant of all duties thereunder, including the duty to supply water to appellee. Appellee cannot then request that appellant's duty to supply water be resurrected by compelling appellant to perform under the 1972 contract. In essence, this would be requiring appellant to sell water to appellee, and at a price dictated by appellee.

The remaining alternative remedies are equally unworkable. For example, if the trial court were to preserve the 1979 contract but strike down the rates contained therein as discriminatory, then what is the result? New rates would have to be determined. This poses yet another dilemma: Who sets the new rates? The court itself is not in a position to decide an appropriate rate. "* * * [A] court may not engage in rate-making since this is a legislative function." 12 McQuillin, Municipal Corporations (3 Ed. Rev. 1986) 616, Section 35.37a. Even if a court were to undertake to set the rates for these parties, it has not been explained how that is to be accomplished. Appellee repeatedly points to the Tallmadge rate in an attempt to highlight the alleged unfairness of its own rate. Should the trial court therefore order that the Tallmadge

rate be paid by appellee, or that appellee's rate be paid by Tallmadge? Or does the court resort to a "compromise verdict" by setting the rate somewhere in the middle? These alternatives are obviously untenable. If the 1972 rates are forced on appellant, appellant would be compelled to continue to supply water at rates to which it has not agreed, thereby stripping appellant of all its discretionary authority over its own water supply. This court has previously refused to compel a municipality to continue to supply water to non-residents under the terms of an expired contract, on the basis that the council of the municipality has the sole authority to decide whether it would continue to furnish its surplus water to surrounding territories. *Indian Hill Acres, supra.*

Ordering the parties to renegotiate is certainly not a realistic alternative. Again, the problem arises of compelling appellant to continue supplying water under terms other than those to which it had agreed. Other problems inevitably present themselves. What rate prevails while the contract is being negotiated? How can the parties be *forced* to come to a meeting of the minds?

It can readily be seen from the foregoing that judicial interference in these kinds of contract disputes creates many more problems than it solves. The only sensible, practical and logical solution is simply to leave the parties with their bargain. It is neither harsh nor unfair to require appellee to abide by the terms of the agreement for which it bargained. Appellee cannot be relieved of its obligations under this contract merely because it now believes that the bargain it made was a bad one.

Moreover, we are mindful of the extreme ramifications which would follow from an order requiring appellant not only to continue to sell its surplus water to appellee, but at a price to which appellant has not agreed. Such an outcome would cast uncertainty on every similar contract throughout the state where the supplier charges a higher rate to extraterritorial purchasers, or differing rates to non-residents in different contracting districts. We are unwilling to take such a step.

Accordingly, we hold that where rates for water from a municipally owned public utility are set forth in a contract, such rates will not be struck down as discriminatory even where no factor exists which could justify the rate discrimination. Therefore, evidence that the water supplier encounters no additional cost or difficulty in selling the water to the party challenging the rates has no bearing on the validity of those rates.

In conclusion, based on the foregoing, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., SWEENEY, WRIGHT, and YOUNG, JJ., concur.

LOCHER and HOLMES, JJ., concur in judgment only.

YOUNG, J., of the Tenth Appellate District, sitting for H. BROWN, J.