VILLAGE OF PLYMOUTH, APPELLANT, *v.* CITY OF WILLARD, APPELLEE.

(No. H-87-29 — Decided
April 22, 1988.)

*Richard P. Wolfe II*, for appellant.
*Thornton, Thornton & Harwood*
and *David B. Harwood*, for appellee.

*Per Curiam.* This cause is on appeal from a judgment of the Huron County Court of Common Pleas.

The events which gave rise to this appeal are essentially undisputed. On May 1, 1981, the parties formally entered into a contract whereby the defendant-appellee city would furnish water to the plaintiff-appellant village. According to the contract, the water provided was to meet Ohio environmental safety standards and appropriate quantities and rates where specified. The twenty-year agreement established that appellant was to be billed on a bi-monthly schedule at a rate based upon its average daily water usage. The contract also contains a paragraph providing for modification of the rate schedule. It is the application of this paragraph which is the focus of the current controversy.

Following the execution of the contract and the construction of a water delivery line, appellant received its first metered water from appellee on December 17, 1981. An increase in rates was first contemplated by appellee in 1985; however, the issue was not formally presented to appellant until 1986. Following notification of its intent to raise the rates, representatives of appellee and appellant met several times prior to May 1, 1986 but failed to reach an agreement. On June 2, 1986, appellee's city council enacted an ordinance increasing the rate charged appellant for its 150,000 gallon per day minimum by seventeen percent. Rates for usage in excess of the minimum were unchanged.

On July 10, 1986, appellant filed an action in the Huron County Court of Common Pleas seeking to enjoin appellee from imposing the rate increase and asking the court to determine "what, if any, rate modification is appropriate" based on an interpretation of the contract. A hearing before a referee was conducted on January 16, 1987. The referee issued his report and recommendations on February 17, 1987, finding that the seventeen-percent increase proposed by appellee was within the parameters of the contract. The trial court adopted the referee's report on June 1, 1987 and ordered that appellant's complaint be dismissed.

From said judgment, appellant sets out the following seven assignments of error:

"1. The Trial Court erred in ruling 'that both parties enjoy the annual right to unilaterally increase or decrease the rate charged for water * * *.'

"2. The Trial Court erred in ruling that the Trial Court's 'only duty * * * is to determine whether or not the decision of Willard to raise the rate was justified under the circumstances presented.'

"3. The Trial Court erred in ruling that a determination of the costs of performance must be based on the 'total cost of operating the water department since the base year of 1982. And that has to be the base year because that's the first full year Willard sold water to Plymouth.'

"4. The Trial Court erred in finding that an increase of 17% is 'within the parameters spelled out in the contract.'

"5. The Trial Court erred in finding that the 'increase is reasonable under the circumstances.'

"6. The Judgment of the Trial

Court is against the weight of the evidence.

"7. The Judgment of the Trial Court is contrary to law."

In its first assignment of error, appellant contends that the trial court improperly interpreted the contract in affording both parties the annual right to unilaterally increase or decrease the rate charged for water. Appellant argues that mutual agreement is a contractually necessary element of such a rate change. This contention is contrary to the plain language of the agreement.

The language of Paragraph 5 illustrates that the parties anticipated the possibility of future rate changes. This paragraph provides:

"5. (Modification of Contract) That the provisions of this contract pertaining to the schedule of rates to be paid by the Purchaser for water delivered are subject to modification at the end of every one year period. Any increase or decrease in rates shall be based on a demonstrable increase or decrease in the costs of performance hereunder, but such costs shall not include increased capitalization of the Seller's system. Other provisions of this contract may be modified or altered by mutual agreement, in writing."

A literal translation of the paragraph indicates that the parties did endorse the concept of "mutual agreement"; however, it was only for "[o]ther provisions" of the contract. There is no mention of mutuality in the portion of the paragraph regulating the modification of rates. The only proviso in this section of the contract requires that any change in rates "be based on a demonstrable increase or decrease in the costs of performance [under the contract] * * *."

Compelling substantiation by the party requesting the increase or decrease foreshadows the potential absence of a shared understanding between the parties, yet furnishes a safeguard for the non-requesting party. Therefore, the trial court was correct in ruling that both parties had unilateral rights regarding rate changes under this paragraph of the contract.

For these reasons, appellant's first assignment of error is found not well-taken.

In its second and seventh assignments of error, appellant argues that the trial court incorrectly decided that its only duty was to determine whether appellee's proffered rate increase was justified under the circumstances and in so determining applied a standard that is contrary to law. Appellant suggests that the court's duty was to ascertain whether appellee demonstrated an increase in its costs of performance under the contract. The difference between this suggestion and what was actually done by the trial court is negligible, *i.e.*, the court's conclusion that a rate increase was justified naturally follows a demonstration of an increase in costs.

Appellant also asserts that the trial court erroneously considered circumstances far beyond those stipulated by the parties. Appellant argues that the referee's report, as adopted by the trial court, gave disproportionate weight to the testimony of appellee's expert witness. This argument is without merit. The expert, a qualified witness, provided the trial court with further evidence upon which to base its ruling. The fact that the expert offered yet a third method of computing the change in costs of performance is irrelevant. In this case, the expert's testimony was merely cumulative, not peculiar or distinct from that offered by the appellee.

Appellant contends that it was incumbent upon the trial court to *set* the rate that appellant should be charged

for water. Appellant argues that the trial court's reliance upon *Orr Felt Co.* v. *Piqua* (1983), 2 Ohio St. 3d 166, 2 OBR 709, 443 N.E. 2d 521, disputing this contention was contrary to law. Appellant asserts that the *Orr Felt* case should be distinguished on the grounds that the provision of water is a governmental, not a proprietary, function, and *Orr Felt* did not involve a contractual relationship.

In *Orr Felt,* the Ohio Supreme Court determined that rates charged for electricity and steam by the city of Piqua were reasonable. In so holding, the court declined to find "a common law of municipal utility rate making." The court observed that rate making is an "inexact science" and stated that the "only restraint imposed by law * * * is 'that the rates charged be reasonable and that there be no unjust discrimination among the customers served * * *.' " *Orr Felt, supra,* at 170-171, 2 OBR at 713, 443 N.E. 2d at 525, quoting *State, ex rel. Mt. Sinai Hospital,* v. *Hickey* (1940), 137 Ohio St. 474, 477, 19 O.O. 159, 161, 30 N.E. 2d 802, 804.

Appellant's argument that the provision of water should be considered governmental rather than proprietary is without merit. The Ohio Legislature specifically categorized the provision of water as a proprietary function in R.C. Chapter 2744. In particular, R.C. 2744.01(G)(2)(c) provides:

"(G)(2) A 'proprietary function' includes, but is not limited to, the following:

"* * *

"(c) The establishment, maintenance, and operation of a utility, including * * * a municipal corporation water supply system[.]"

Several of the concepts enumerated in *Orr Felt* and *Mt. Sinai Hospital* were applied in a situation where water service rates were established by contract. See *Fairway Manor, Inc.* v. *Bd. of Commrs. of Summit Cty.* (1988), 36 Ohio St. 3d 85, 521 N.E. 2d 818. In *Fairway Manor,* the court confronted the issue of inequality between contract rates for two different water customers. Specifically, faced with the question of the extent to which a court will review the rates charged by a municipally owned water supplier to an outside purchaser when those rates are contained in a contract negotiated between the parties, the court held that such rates will not be struck down as discriminatory even where no factor exists which could justify any type of rate discrimination. The court also held, *inter alia,* that:

"[W]here a particular rate is fixed by contract, it is for the parties, *not the courts,* to determine the rate to be charged. In such matters, courts will presume the wisdom of the bargain and uphold the contract." (Emphasis added.) *Id.* at 88, 521 N.E. 2d at 822.

In light of these considerations, it was proper for the trial court to decline appellant's request to set its own rate under the contract. It was also appropriate for the trial court to determine whether appellee's suggested rate increase was justified under the circumstances and therefore a "demonstrable increase."

For the aforestated reasons, appellant's second and seventh assignments of error are found not well-taken.

In its third assignment of error, appellant disputes the trial court's determination that 1982 was the appropriate base year to use in evaluating appellee's increased costs of performance. Appellant would have the court focus on 1981 since the contract was signed on May 1, 1981. This argument is resolved through an evaluation of the parties' performance under other sections of the contract.

Although the contract was signed in the spring of 1981, much of the re-

50

maining year was spent constructing water delivery lines and installing metering equipment. Appellant received its first gallon of metered water on December 17, 1981, when ninety-five percent of 1981 had already elapsed. Therefore, 1982 was the first full year appellant received water from appellee and should be the base year in determining if an increase in costs of performance is demonstrated.

For this reason, appellant's third assignment of error is found not well-taken.

In its fourth assignment of error, appellant contends that the trial court erred in finding that an increase of seventeen percent was within the parameters of the contract. Appellant concedes that an evaluation of costs from 1982 through 1985 does indicate an increase in costs in excess of seventeen percent; however, appellant insists that costs of performance in 1981 should also be evaluated in determining an appropriate rate increase. This argument is without merit considering our disposition of appellant's previous assignment of error.

It should also be noted that the only element required to support a modification of rates under the contract is a "demonstrable increase or decrease in the costs of performance." The figures presented by both parties establish some increase; therefore, the increase was properly considered "demonstrable" by the trial court and was accordingly within the parameters of the contract.

For the aforestated reason, appellant's fourth assignment of error is found not well-taken.

Appellant's fifth assignment of error is focused on the trial court's finding that the increase was "reasonable" under the circumstances.

The referee's report, as adopted by the trial court, stated that the preponderance of evidence indicated that an increase of seventeen percent was reasonable under the circumstances. The search for reasonableness was motivated by *Orr Felt, supra,* where the court stated "[t]he only restraint imposed by law * * * is 'that the rates charged be reasonable * * *.' " (Citation omitted.) *Id.* at 170-171, 2 OBR at 713, 443 N.E. 2d at 525. Therefore, it was proper for the trial court to give appellant the further benefit of evaluating the increase under the standard of "reasonableness."

For the aforestated reason, appellant's fifth assignment of error is found not well-taken.

Appellant argues, in its sixth assignment of error, that the judgment of the trial court is against the manifest weight of the evidence. The Ohio Supreme Court established a standard for determining whether a trial court's decision is against the manifest weight of the evidence in *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 411-412, 461 N.E. 2d 1273, 1276. In *Seasons Coal,* the court stated that:

" 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " (Citation omitted.)

Additionally, "every reasonable presumption" shall be made in favor of the judgment of the trial court and the finding of facts. *Id.* at fn. 3.

In this case, statistical evidence presented by both parties regarding the change in costs of performance supports a finding by the trial court that seventeen percent was an appropriate increase. Appellant would have the court adopt its calculations which show an increase of five percent. Appellant's increase is computed using 1981 as the base year. It is calculated

to determine the increase in price per gallon pumped rather than the overall change in costs of performance under the contract. Appellant would also have the court disregard evidence which indicates increased costs of 28.17 percent. Additionally, expert testimony indicated that the seventeen-percent increase legislated by appellee was substantiated by the calculations submitted. Therefore, the trial court was justified in concluding that the costs of performance had increased at least seventeen percent during the life of the contract. To adopt appellant's contentions would be totally unrealistic in light of the evidence presented.

For the aforestated reasons, appellant's sixth assignment of error is found not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

RESNICK, P.J., CONNORS and GLASSER, JJ., concur.