### Gaston, Inc. v. Hamilton
*[Cite as 8 AOA 688]*

*Case No. CA90-07-133*
*Butler County, (12th)*
*Decided December 10, 1990*

*Richard Hurchanik, 6 South Second Street, Suite 214, Hamilton, Ohio 45011, for Plaintiff-Appellee.*

*Lester W. Koehler, Hamilton City Law Director and Gary L. Sheets, Municipal Building, Hamilton, Ohio 45011, for Defendant-Appellant.*

KOEHLER, J.

Defendant-appellant, the city of Hamilton ("city"), appeals from a judgment by the Butler County Court of Common Pleas upon a jury verdict awarding $10,000 to plaintiff-appellee, Gaston, Inc. ("Gaston").

This matter arose out of a contract between these parties for Gaston to replace portions of the city's underground natural gas mains using thermoplastic gas pipeline. Gaston entered the lowest bid and was awarded the contract. The bid schedule provided that this was to be a "unit price" contract, meaning that Gaston would be paid according to the quantity of work completed. Specifically, the bid schedule provided that:

"The quantities listed on the Proposal Form are an estimate of the work to be done. The City reserves the right to either increase or decrease these estimated quantities at the unit price bid for the various items. The City further reserves the right to evaluate the bids based on estimated quantities other than those listed on the Proposal Form if construction of the improvement so requires."

The bid schedule additionally provided as follows:

"The bidder agrees that the quantities or work as stated in his proposal and quotation, or indicated on the plans, are only approximate, and that during the progress of the work the City may find it advisable, and it shall have the right, to omit portions of the work and to increase or decrease the quantities, and that the city reserves the right to add or take from any items or delete any items as may be deemed necessary or desirable. Under no circumstances or conditions will the contractor be paid anything on account of anticipated profits upon the work which is not actually performed."

. The contract entered into by the parties was based upon this bid schedule and additionally indicated that "[t]he term 'work' of the Contractor *** includes labor, materials, equipment, apparatus, transportation, and other facilities necessary to complete the contract." The contract additionally adopted language in the bid schedule regarding the quantity of work to be performed.

The contract specified six streets under which Gaston would install the new gas lines. Gaston began work on August 26, 1985. Apparently, neither party was satisfied with the other's performance of the contract. Gaston complained that the city would not allow its workers to move on to the next street until the street on which they were working was completed and that this requirement delayed their work. The city countered that Gaston's progress was slow and that the

city had insisted Gaston stay on one street until it was finished because workmanship was unsatisfactory.

Based upon its dissatisfaction with the work and upon the advancing winter which would put a halt to Gaston's work, the city determined to omit two streets from the six total streets originally agreed upon by the parties. The city informed Gaston by letter that it was exercising its option to omit part of the work as provided in the bid schedule and contract. Gaston stopped work and received the final amounts due under its retainage. However, Gaston did not receive payment for the two streets upon which it did not work.

In January 1987, Gaston initiated a breach of contract action against the city based upon its claim that the city had failed to perform according to the agreement between the parties. The city filed a counterclaim, arguing that Gaston's performance had been unworkmanlike, resulting in considerable damage to the city. The matter was tried before a jury, which concluded in eleven special interrogatories that the city had breached the contract. The jury concluded that Gaston was entitled to $10,000 damages which was "not related to loss of anticipated profits upon any work not actually performed by the plaintiff." The jury found in favor of Gaston on the city's counterclaim.

The city moved for judgment notwithstanding the verdict, which motion the trial court denied, entering judgment against the city in the amount of $10,000. The city has timely appealed, raising two assignments of error:

"Assignment of Error No. 1.

"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE CITY OF HAMILTON WHEN IT OVERRULED THE CITY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BASED ON THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE PARTIES' CONTRACT WHICH PROVIDED THE CITY COULD BOTH INCREASE OR DECREASE THE QUANTITIES OF MATERIALS TO BE USED AND OMIT PORTIONS OF THE WORK."

"Assignment of Error No. 2.
"AS A MATTER OF LAW, THE JURY'S $10,000 GENERAL VERDICT AWARD TO GASTON, INC. FOR THE CITY'S 'BREACH OF CONTRACT' IS UNLAWFUL IN THAT THERE IS NO BASIS IN CONTRACT LAW FOR SUCH AN AWARD."

In its first assignment of error, the city argues that the contract clearly and unambiguously entitled the city to delete portions of the work and that since the parties to the contract agreed to give the city this right, Gaston should not have been permitted to prevail in its breach of contract action.

In considering the motion for judgment notwithstanding the verdict, the trial court was required to construe the evidence most strongly in favor of Gaston, and where there was evidence to support Gaston's case upon which reasonable minds could have differed, the motion must have been denied. *Osler v. Lorain* (1986), 28 Ohio St. 3d 345, 347, citing *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275. The city argued below and argues herein that it was entitled to prevail as a matter of law, so that reasonable minds could not have differed on the question of whether the city had breached the contract. The city bases its contention upon clear language in the contract giving it the right to eliminate part of the work for which the parties contracted. Because we agree with the city that Gaston had contracted away its right to insist that the entire job be completed and compensated, we sustain the city's first assignment of error.

In construing the meaning of contractual language, common words will be given their ordinary meaning unless "manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, syllabus. Additionally, we must presume that the language of the contract entered into by these parties accurately reflects their intention. *Fairway Manor, Inc. v. Bd. of Commrs. of Summit Cty.* (1988), 36 Ohio St. 3d 85, 87, certiorari denied (1989), __ U.S.__, 109 S.Ct. 785. The parties in the instant action clearly expressed their intention that the city be permitted to eliminate portions of the work or materials to be used. Since both the bid schedule and the contract clearly stated this, we must assume Gaston was aware of the intentions of the city, and was agreeable to same. When the meaning of a writing is evident, and "tends to no absurd

conclusions, there can be no reason for not adopting that meaning." *Allen v. Standard Oil Co.* (1982), 2 Ohio St. 3d 122, 124.

Gaston counters these arguments on two grounds:

first, that Gaston understood the disputed clauses to mean that only the quantity of materials could be altered, and not the quantity of the work; and secondly, that under the concept of quasi-contract Gaston was led to its detriment to rely upon an impermissibly one-sided contract.

We will dispose of this second argument first. In Ohio, quasi-contracts, or contracts which are "implied-in-law," cannot be used as a basis for a breach of contract claim against a municipal corporation. *Cuyahoga Cty. Hosp. v. Cleveland* (1984), 15 Ohio App. 3d 70, 72; *Eastlake v. Davis* (1952), 94 Ohio App. 71, 74. Therefore, Gaston is not entitled to prevail under a theory of promissory estoppel, restitution, or expectation.

Gaston's argument that the city misinterpreted the contract to suit its own ends is also not well-taken. The contract clearly states that the city will have the right to omit portions of the work, with the term "work" including labor and materials. The plain meaning of these words indicates that if the city so chose it could eliminate two streets from the total without breaching the contract.

Because we conclude that the plain meaning of the contract entitled the city to eliminate the two streets, there was no breach of contract as a matter of law, and the trial court should have granted the city's motion for judgment notwithstanding the verdict. The city's first assignment of error is sustained.

The city's second assignment of error essentially argues that Gaston was not entitled to a $10,000 jury award because the city did not breach the contract and because no other foundation existed upon which to base such award. We agree, and so sustain the city's second assignment of error.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and the judgment rendered to appellee be vacated and the cause dismissed pursuant to App. R. 12(B).

YOUNG, J., concurs.

JONES, P.J., dissents.

JONES, P.J., dissenting.

I respectfully dissent. The jury verdict should be upheld. Upon acceptance of its bid, appellant was required to expend substantial sums for special equipment, special training, and mobilization, including costs involving purchasing, renting, and diverting of equipment from other jobs and the hiring or diverting of manpower. There was substantial evidence that the city delayed appellee on certain streets by refusing to permit work on some streets until others were fully completed. The contractor lost time when the city ran out of fittings.

I deem it most significant that the jury decided against the city on its counterclaim. The interrogatories to the jury in this trial of three and one-half days fully support the modest verdict. By permitting the city to eliminate two streets from the contract, this court is essentially holding that the city could eliminate all six streets, in which event the contract would be without meaning.