DECISION AND JUDGMENT ENTRY
This case comes before the court on appeal from a judgment of the Wood County Court of Common Pleas, which granted summary judgment to defendants-appellees, Harold and Marcia McCarty, individually and as trustees of the Harold L. McCarty Amended Revocable Trust. Plaintiff-appellant, the village of North Baltimore, appeals that judgment and asserts the following errors occurred in the proceedings below:
 "A. THE COURT ABUSED ITS DISCRETION IN GRANTING DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT BASED ON THE EQUITABLE DOCTRINE THAT APPELLANT-VILLAGE DID NOT HAVE `CLEAN HANDS' AND THEREFORE WAS NOT ENTITLED TO A DECLARATORY JUDGMENT.
 "B. BASED ON THE EVIDENCE, THE TRIAL COURT SHOULD HAVE GRANTED APPELLANT-VILLAGE'S MOTION FOR SUMMARY JUDGMENT DECLARING THE CONTRACT BETWEEN THE PARTIES VALID AND ENFORCEABLE AND REQUIRING DEFENDANT-APPELLEES TO ANNEX THEIR PROPERTY TO THE VILLAGE."
Appellant, a municipal corporation located in Wood County, Ohio, owns and operates its own water and sewer systems. In April 1994, the village council enacted Village of North Baltimore Ordinance Sections 04-94 and 05-94 adopting Codified Ordinances 913.72 and 913.73, as well as Codified Ordinances 905.09 and 905.10. The ordinances required that property owners desiring an extension of, enlargement of, or addition to sewer or water services provided by appellant agree to annexation of their property to the village. Village of North Baltimore Ordinance Section 04-94 applied to water services and Village of North Baltimore Ordinance Section 05-94 applied to sewer services.
On January 1, 1995, appellees entered into a contract with appellant for the extension of water and sewer services to their property. In return, appellees agreed to seek annexation of their property to the village "at such time as said real estate becomes contiguous to the corporate limits of the VILLAGE of North Baltimore." However, when appellees' property became contiguous to the village, appellees refused to proceed with an annexation petition. As a result, appellant filed a declaratory judgment action asking the common pleas court to declare that the agreement between the parties is valid and enforceable. Appellant further requested a mandatory injunction requiring appellees to immediately sign the necessary petition and pursue annexation.
During the course of discovery, appellees learned that appellant expanded and improved its public water system on several occasions over the years. Of interest to this case was the fact that, in obtaining a federal grant to improve its waste water treatment facility, appellant, during at least the first phase of the project, provided the United States Environmental Agency ("EPA") with the assurance that it would not require annexation as a precondition to the extension of sanitary sewer service outside village corporate limits. This assurance was in the form of a resolution, R5-80, passed by the village council in 1980. A second assurance is a document executed in March 1987 and captioned "NON-RESTRICTIVE SERVICE-ANNEXATION ASSURANCE." The document is presumably an assurance made in connection with the second phase of the project and merely assures the EPA that "no policy or ordinance exists to require annexation as a pre-condition for service connection to appellant's proposed sewer system improvements." It makes no assurances for the future. Both appellant and appellees filed motions for summary judgment. In granting appellees' motion for summary judgment and denying appellant's motion, the trial court declined to enforce the 1995 contract between the parties. The court reasoned that appellant was seeking an equitable remedy, specific performance, and that due to the assurances provided to the EPA, the equitable doctrine of "clean hands" was applicable. Based on this reasoning, the court concluded that its equitable jurisdiction "should not be utilized to enforce the contract which is the subject of this action."
The standard applicable to appellant's assignments of error is found in Civ.R. 56(C), which provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. See, also, Horton v. HarwickChem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. This court engages in a de novo review of the lower court's grant of summary judgment. Brown v. Scioto Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711.
In its first assignment of error, appellant initially argues that the trial court made "gross errors" in setting forth the facts of this case. First, the village notes that the court mischaracterizes the deposition testimony of Carolyn Lineback, appellant's expert on federal grants, by omitting a key portion of that testimony.
In her deposition, Lineback opined that ordinances or resolutions that are required to be part of a grant agreement go on forever "unless the granting agency changes its mind." The court omitted the quoted portion of Lineback's opinion from its findings of fact. According to appellant, this omission is critical because, in Lineback's opinion, the EPA changed its policy on the issue of annexation in 1980. Lineback based this opinion on various conversations she had with government personnel and documents mailed to her as a result of those conversations. In particular, she relied on a memorandum letter dated June 10, 1980, from the Deputy Assistant Administrator for Water Program Operations of the EPA stating that annexation is a local matter to be determined by state and local law. This policy is reiterated in a fax sent to Lineback by the EPA. The fax is a letter sent to a United States Senator in 1994 from Assistant Administrator Robert Perciasepe. The letter states: "Annexation is a local and State question involving both legal and political considerations that is not to be resolved by the Environmental Protections Agency." While we agree that the lower court's finding is incomplete, we also conclude that EPA policy changes, if any, are not dispositive of the issues before us, and therefore, the alleged error is harmless.
Appellant also points out that the trial court's judgment is factually incorrect in that it indicates that a "no annexation assurance" was the quid pro quo for the receipt of a $1.4 million plus grant for the wastewater treatment project. We agree with appellant. There is no evidence in the record of this case tending to show that, in order to receive $1.4 million, appellant was contractually bound to offer an assurance to the EPA that it would not require property owners to seek annexation of their property to the village as a precondition to the receipt of sewer services. While such an assurance was made, at least during the early stages of the project, one cannot infer that this was a contractual term between appellant and the EPA upon which the provision of the grant rested.
Finally, appellant argues that the common pleas court was in error when it stated that appellant received the grant from the EPA "to expand and improve the very water and sewer system
involved in providing services" to appellees. We must again agree. There are no facts in the record from which the trier of fact could reasonably infer that appellant: (1) received funds from the EPA for the expansion/improvement of its water service facility; and/or (2) made "no annexation" assurances to anyone in order to obtain those funds, if any. Consequently, the evidence offered establishes that the two systems must be treated separately and any assurances made to the EPA with regard to the wastewater treatment (sewer) improvement project cannot be applied to the requirement of annexation in exchange for water service.
Because the trial court used appellant's assurances to the EPA as the basis for the application of the doctrine of clean hands and resulting grant of summary judgment to appellees, these last two factual inaccuracies are important to its decision. Particularly in light of the fact that appellant asserts that the trial court misapplied the doctrine of clean hands to this case.
The maxim, "he who comes into equity must come with clean hands," requires only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject matter of his suit. Basil v.Vincello (1990), 50 Ohio St.3d 185, 190, quoting Kinner v. Lake Shore Michigan S. Ry. Co. (1904), 69 Ohio St. 339, paragraph one of the syllabus; Goldberger v. Bexley Properties (1983), 5 Ohio St.3d 82, 85.
In the present case, we shall assume that appellant, during the course of obtaining grants for two of three phases of an improvement project for sewage treatment only, assured the EPA of a "no annexation" policy in extending sewer services to property owners outside the village corporate limits. This happened in the 1980's. In 1994, the village council enacted an ordinance which, in effect, repealed or nullified the 1980 resolution. While repeals by implication are not favored, see Lucas County Commrs. v Toledo
(1971), 28 Ohio St.2d 214, 217, the repeal by implication is valid where the statute or ordinance is in clear conflict with existing legislation upon the same subject matter. Goff v. Gates (1912),87 Ohio St. 142, 149, Peppers v. Beier (1991), 75 Ohio App.3d 420. Here, R5-80 is in direct conflict with Village of North Baltimore Ordinance Section 05-94 on the issue of annexation as a precondition to sewer service. Thus, Village of North Baltimore Ordinance Section 05-94 nullified R5-80. As to the 1987 "letter of assurance," it only states that appellant did not require annexation as a precondition to the provision of sewer services at that point in time. It cannot be inferred from this letter that appellant is promising to continue a "no annexation" policy indefinitely.
Moreover, and assuming that the assurances offered to the EPA during the wastewater treatment improvement project are still in effect, they do not constitute reprehensible conduct with respect to the subject matter of the pending suit. That is, appellant's conduct in making assurances to the EPA of a "no annexation policy" constitutes conduct in that relationship, but is not reprehensible conduct in the present case. In Kinner, several railroad carriers agreed to reduce their rates for transporting passengers to a convention. Id. at paragraph two of the syllabus. However, they also made the train tickets nontransferable and required ticket holders to provide identification as the original purchasers. Id. One of the railroad companies sought an injunction against "scalpers" who purchased the tickets for re-sale to persons going to the convention. Id. The Ohio Supreme Court found that even though the agreement between the railroad companies was illegal, it was not reprehensible conduct in the "contract" between train ticket holders and the railroad companies. Id.
Here, Village of North Baltimore Ordinance Section 05-94 made it clear to property owners outside the village's corporate limits that, in order to obtain water and sewer services, they would be required to enter into a contract mandating annexation when their property became contiguous to the village of North Baltimore. Appellees entered into such an agreement. The fact that appellant made assurances of no such requirement to the federal government several years previously cannot be used to create a question of fact on the issue of reprehensible conduct in this case and, therefore, justify a denial of appellant's request for relief.
Appellees argue that the case before us is on point with GrandChute Sanitary District Nos. 1 and 2 v. Taco Bell (1989),152 Wisc.2d 405, 449 N.W.2d 337. We do not find the Wisconsin case persuasive. First, and despite the citation,Grand Chute is an unpublished case from another jurisdiction. Second, Grand Chute involves the enforcement of an agreement between the city of Appleton, Wisconsin, and the EPA to refrain from requiring annexation for the provision of sewer service to a stated area and for a limited period of time. The Grand Chute
court noted:
 "Conditional grants between municipal government and federal agencies are commonly executed. The requirement that the city serve all people within the sewer service area without a precondition of annexation extends only for the life of the grant. The substantial sum of money the city received from the federal government in exchange for its promise to serve such citizens for a specific period of time is nothing more than a contractual agreement, by which the city was paid to provide certain services to all people residing in a limited geographic area. Because the service area was defined within the terms of the agreement and the agreement was limited and reasonable as to time and application, we conclude that the city's obligations under the EPA contract are legal and enforceable." (Emphasis added.)
Enforcement of a contract between appellant and the EPA requiring water and sewer service to persons living in a specific service area for a limited period of time is not an issue in this case. There is no evidence of such a contract. Rather, the issue is the contract between appellant and appellees and the effect, if any, of assurances appellant made to the EPA during the grant period on appellant's ability to seek specific performance of that contract. Thus, Grand Chute is distinguishable from the present case.
Appellees also cite to Wayne v. Village of Sebring
(C.A.6, 1994), 36 F.3d 517, which held that so long as a loan resolution requiring Sebring to provide water service to all rural residents in its service area remained in effect, Sebring could not require prior annexation for the provision of water and sewer service. See, also, Krug v. City of Sebring (Dec. 30, 1993), Mahoning App. No. 92-CA-49, unreported (loan resolution binding only so long as financing bonds held or insured by the federal government). Unlike Sebring, the resolution in the case at hand was implicitly repealed. Contrary to the expressed desires of the federal lender (Farmers Home Administration) in Sebring, the EPA has never sought to enforce R5-80. In fact, no evidence was offered to show that the EPA required "no annexation" assurances from appellant at the time of the funding of the third stage of the sewer project. Therefore, Sebring is factually dissimilar from the case before us. For all of these reasons, the trial court did err in granting appellees' motion for summary judgment, and appellant's first assignment of error is found well-taken.
In its second assignment of error, appellant asserts that the trial court erred in failing to grant its motion for summary judgment. Because we concluded that the assurances provided to the EPA during the wastewater treatment project are insufficient to create a question of fact as to "the clean hands doctrine," we find that this assignment has merit.
In the absence of a contractual obligation, municipalities have no duty to provide water services outside their corporate limits.Fairway Manor, Inc. v. Bd. of Commrs. of Summit Cty. (1988),36 Ohio St.3d 85, paragraph one of the syllabus. Where a contract for water and sewer services exists, "[c]ourts must presume that the language of a contract between competent persons accurately reflects the intentions of the parties." Id. at 86, citing Kelly v. MedicalLife Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. In the present case, the contract between the parties plainly and unambiguously requires that in return for such services appellees must file a petition for annexation when their property becomes contiguous to the village of North Baltimore. It is undisputed that appellees received the water and sewer services and that their property is now contiguous to the village. Therefore, they are required to file a petition for annexation. See Andres v.City of Perrysburg (1988), 47 Ohio App.3d 51; City of Perrysburgv. Koenig (Dec. 8, 1995), Wood App. No. WD-95-011, unreported. Accordingly, the trial court erred in denying appellant's motion for summary judgment. Appellant's second assignment of error is found well-taken.
The judgment of the Wood County Court of Common Pleas is reversed. This cause is remanded to that court for the entry of a declaratory judgment in favor of the village of North Baltimore and the issuance of a mandatory injunction requiring appellees to sign and prosecute a petition for annexation pursuant to the January 1, 1995 contract. Appellees are ordered to pay the costs of this appeal.
JUDGMENT REVERSED.
PETER M. HANDWORK, J., JUDGE, MELVIN L. RESNICK, J., JUDGE, RICHARD W. KNEPPER, P.J., JUDGE, CONCUR.