DECISION AND JUDGMENT ENTRY
{¶ 1} Wayne and Cheryl McAlarney ("the McAlarneys") and McAlarney Pools, Spas Billiards, Inc. ("McAlarney Pools") appeal the judgment of Marietta Municipal Court in favor of MKB Leasing Corporation ("MKB"). They argue that the trial court's finding that the lease agreement between Robert Sagowitz and MKB ("The Lease") was a commercial lease was against the manifest weight of the evidence. Because some competent, credible evidence supports the trial court's finding, we disagree. The McAlarneys and McAlarney Pools also argue that the trial court erred in compensating MKB for the lease deficiency and awarding attorney fees to MKB. Because they failed to raise these arguments in the trial court, we do not consider them. Finally, the McAlarneys and McAlarney Pools argue that the trial court erred in calculating the excess mileage. Because we find that dividing the yearly mileage allowance into monthly allowances when the lessor defaults on the lease prior the lease term is a reasonable interpretation of The Lease and because the McAlarneys and McAlarney Pools offer no support to the contrary, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On September 1, 2000, MKB filed a complaint alleging that approximately one year after Robert Sagowitz entered into a forty-eight month motor vehicle lease ("The Lease") for a truck, he returned the truck to MKB. MKB sought $6,493.15 in damages, which included: (1) $1,353.72 for past due payments and late fees; (2) a $668.14 excess mileage fee; (3) $3,122 due to the default of the lease agreement; (4) $1,181.29 for necessary repairs; and (5) $168 for two tires.
 {¶ 3} MKB also alleged that McAlarney Pools Spas, Inc. was in default of a guarantee obligation because it executed a corporate guaranty for The Lease.
 {¶ 4} MKB finally alleged that Wayne and Cheryl McAlarney were in default of a guaranty they had executed for The Lease.
 {¶ 5} Sagowitz filed a pro se answer in which he agreed to all claims filed against him. The remaining defendants filed an answer, which included a cross-claim for indemnification against Sagowitz.
 {¶ 6} During the trial to the court, Sagowitz admitted that he entered into and defaulted on The Lease. He explained that he paid for the insurance on the truck, but did not get commercial insurance. Sagowitz admitted that he chose to initial the box on The Lease that stated that he intended to use the vehicle "[p]rimarily for agricultural, business or commercial purposes." He stated that he did this because he believed that in addition to using the truck for personal purposes, he would be using it to "transport goods back and forth between [McAlarney Pools'] stores." He testified that he actually used the truck to transport goods between stores only two to four times. However, he decided to buy a truck rather than a car in part because he wanted to be able to use it for work. According to Sagowitz, the truck had non-commercial license plates.
 {¶ 7} Clifford R. Canfield, III testified that he is the president of MKB Leasing. He explained that after he turned down Sagowitz's application to lease a vehicle, Sagowitz indicated to him that his employers, the McAlarneys, wanted him to have the truck and that they would guarantee it. He also testified that he believed that the truck was for Sagowitz to use in his employment.
 {¶ 8} Canfield testified that the McAlarneys contacted MKB in the fall of 1999 to tell him that Sagowitz was no longer employed at McAlarney Pools and asked him to take them off the contract. Canfield told the McAlarneys that their request was not possible.
 {¶ 9} According to Canfield, Sagowitz returned the truck to him in the early summer of 2000 with some damage. He testified that the repairs done on the truck and the replacement of two tires were reasonable. MKB sold the truck for fifteen thousand dollars in September 2000.
 {¶ 10} Canfield testified that he calculated the excess mileage fee by taking the yearly mileage allowance, fifteen thousand miles per month, and dividing it by twelve to arrive at a monthly allowance. Canfield also explained how he calculated the deficiency damages.
 {¶ 11} Canfield admitted that Sagowitz obtained his own insurance on the truck, but that he did not know whether he obtained insurance for commercial use. Canfield testified that he did not know what kind of license plates were put on the truck, but that he knew they were supplied by MKB.
 {¶ 12} According to Canfield, Sagowitz determined that The Lease was commercial because Sagowitz presented it that way to him and because Sagowitz was at MKB at the instruction of the McAlarneys. He explained that he gave Sagowitz the option of checking the "personal, family or household purposes" box or the "agricultural, business or commercial purposes" box on The Lease. After Sagowitz verbally indicated that he would be using the truck for business, Canfield directed him to check the "agricultural, business or commercial purposes" box.
 {¶ 13} Wayne McAlarney testified that he is the vice-president of McAlarney Pools. McAlarney admitted that he and his wife guaranteed Sagowitz's lease both personally and on behalf of McAlarney Pools. He explained that he and his wife co-signed for Sagowitz because he needed transportation to and from work. According to McAlarney, Sagowitz did not need a truck for work because McAlarney Pools owned six or seven vehicles. He testified that the occasional need for an employee to use his or her own vehicle for employment purposes had nothing to do with his decision to co-sign for Sagowitz.
 {¶ 14} At the conclusion of the hearing, the parties did not offer arguments and the trial court asked them to submit written arguments and proposed findings of fact and conclusions of law.
 {¶ 15} In their memorandum, the McAlarneys and McAlarney Pools argued: (1) that Regulation M applied because the lease was not a commercial lease and that MKB had failed to comply with Regulation M; (2) MKB had improperly calculated the excess mileage fee by prorating the partial year that Sagowitz had the truck; (3) MKB did not demonstrate "any recoverable loss"; and (4) MKB did not prove ownership of the truck via a certificate of title.
 {¶ 16} After MKB, the McAlarneys, and McAlarney Pools filed written arguments and proposed findings of fact and conclusions of law, the trial court issued its decision. The trial court found that MKB suffered $5,915.86 in damages because of Sagowitz's default on The Lease ($1,353.72 in past due payments and late fees, $668.14 in excess mileage fees, $772 in repair work, and a $3,122 lease deficiency). The trial court found that at the time of The Lease, Sagowitz indicated that he would use the truck as a commercial vehicle. The trial court concluded that The Lease was a commercial lease and, therefore, Regulation M of the Truth in Lending Act did not apply to the lease. The trial court further concluded that MKB is entitled to attorneys fees under both The Lease and the guaranties. The trial court also awarded the McAlarneys and McAlarney Pools judgment against Sagowitz on their cross-claim.
 {¶ 17} The trial court held a hearing on the issue of attorney fees. Dennis Sipe, attorney, testified that after reviewing the case file and billings to MKB, he concluded that MKB's attorneys' work was normal and ordinary for commercial litigation. He further concluded that the attorney fees were fair and reasonable for this type of case and for Washington County. The bills introduced at the hearing indicated that MKB's total bill was $5,406 in billed time and $162 worth of non-billed time. The trial court awarded MKB $5,406.
 {¶ 18} The McAlarneys and McAlarney Pools appeal and assert that: "[I.] It is error for a trial court to disregard the mandatory provisions of 15 U.S.C. § 1601 and the regulations thereunder, (commonly called Regulation M) regarding consumer leases, when by definition the vehicle lease in the instant case clearly was a consumer lease. [II.] The damages awarded Plaintiff Appellant by the trial court were excessive, were not represented by any credible evidence, are contrary to law and do not comply with Regulation M. [III.] It is error for the trial court to award excessive attorney fees to Plaintiff-Appellee in the instant case when any fees at all were not justified by the facts and the law."
 II. {¶ 19} In their first assignment of error, the McAlarneys and McAlarney Pools argue that the trial court erred in finding that The Lease was a commercial lease. Their argument focuses on the facts supporting their assertion that The Lease was not a commercial lease. Therefore, we construe their argument as asserting that the trial court's finding that The Lease was a commercial lease is against the manifest weight of the evidence.
 {¶ 20} A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
 {¶ 21} We find that there is competent, credible evidence to support the trial court's finding that The Lease was a commercial lease.
 {¶ 22} Sagowitz admitted that he chose to initial the box on The Lease that stated that he intended to use the vehicle "Primarily for agricultural, business or commercial purposes." The Lease stated in paragraph 21, part d, that "any changes to this lease must be in writing and signed by the party to be bound." No such written change to The Lease terms is in the record. Sagowitz's employer, McAlarney Pools, guaranteed The Lease. Accordingly, the trial court's finding that The Lease was a commercial lease is not against the manifest weight of the evidence. Therefore, the provisions of Regulation M do not apply and we overrule the McAlarneys and McAlarney Pools' first assignment of error.
 III. {¶ 23} In their second assignment of error, the McAlarneys and McAlarney Pools argue that the trial court erred in awarding a $3,122 lease deficiency and in calculating the excess mileage fee.
 {¶ 24} The McAlarneys and McAlarney Pools first argue that the lease deficiency was an improper penalty rather than liquidated damages; however, they failed to make this argument to the trial court. It is a cardinal rule of appellate review that a party cannot assert new legal theories for the first time on appeal. Stores Realty Co. v. Cleveland
(1975), 41 Ohio St.2d 41, 43. Therefore, we will not consider issues that an appellant failed to raise initially in the trial court. Lippy v.Society Natl. Bank (1993), 88 Ohio App.3d 33. Because the McAlarneys and McAlarney Pools failed to raise this argument in the trial court, they have waived it and we will not consider it.
 {¶ 25} Next, the McAlarneys and McAlarney Pools argue that the trial court erred in prorating the yearly mileage allowance. They argue that The Lease permitted fifteen thousand miles per year and did not break the allowable miles into monthly units.
 {¶ 26} We presume that the language of a contract between competent persons accurately reflects their intentions. Fairway Manor,Inc. v. Bd. of Commrs. of Summit Cty. (1988), 36 Ohio St.3d 85; Kelly v.Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. When the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law.Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214;Alexander v. Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
 {¶ 27} Here, the contract provided, "i. Excessive Wear and Use. I may be charged * * * for mileage in excess of 15,000 miles per year at the rate of .12¢ (sic) per mile." (Emphasis in original). The language of the contract is unambiguous that Sagowitz was permitted to drive the truck fifteen thousand miles per year without incurring additional charges; however, he did not have the truck for two years, which would have entitled him to thirty thousand miles without an additional fee. Prorating the fifteen thousand miles by month is reasonable, given that the fees to be paid by Sagowitz were divided into monthly payments.
 {¶ 28} We find that the McAlarneys and McAlarney Pool's proposed interpretation of the contract is unreasonable and that they have cited absolutely no legal authority in support. Accordingly, we reject their argument and overrule their second assignment of error.
 IV. {¶ 29} In their third assignment of error, the McAlarneys and McAlarney Pools argue that the trial court erred in granting attorney fees to MKB because: (1) a contractual provision that permits a party to recover its attorney fees is unenforceable against public policy, (2) a guarantor separately guaranteeing attorney fees is improper; (3) the amount of attorney fees is unreasonable.
 {¶ 30} The McAlarneys and McAlarney Pools failed to raise any of these arguments in the trial court. Because they failed to raise these arguments in the trial court, they have waived them and we will not consider them. Stores Realty; Lippy. Accordingly, we overrule The McAlarneys and McAlarney Pools' third assignment of error.
 V. {¶ 31} In sum, we overrule all of the McAlarneys and McAlarney Pools' assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.