OPINION
{¶ 1} Defendant-appellant, Kim D. Ferguson ("appellant") appeals from the December 9, 2005 judgment entry of the Franklin County Court of Common Pleas, in which that court granted summary judgment against appellant and in favor of plaintiff-appellee, Amerisourcebergen Drug Corporation ("appellee") on appellee's claims for breach of a personal guaranty. The court awarded damages in the amount of $264,746.81.
 {¶ 2} The following facts are gleaned from the record or are otherwise undisputed. Appellant is the vice president of Hallmark Pharmacies, Inc. d/b/a South Shore Drug Store ("Hallmark"), and has held this position since Hallmark's incorporation in 1995. Appellant owns 40 percent of the outstanding shares in Hallmark. Appellee is a wholesale pharmaceutical supplier. On January 24, 2000, appellant filled out a credit application through which Hallmark sought to be able to purchase pharmaceuticals on credit from appellee for resale to the public. On the second page of the two-page application, appellant signed the signature block designated for the corporation to sign through its representative. The following language appears directly beneath this signature block:
Personal Guaranty:
The undersigned, for valuable consideration received, hereby personally and unconditionally guarantees each and every obligation to AmeriSource Corporation by this applicant until fully paid.
Beneath this paragraph, appellant signed her name.
 {¶ 3} Hallmark made purchases from appellee, on credit, through August 2003, but failed to pay certain invoiced amounts. On March 10, 2005, appellee filed a complaint against Hallmark and appellant. According to appellee's complaint, Hallmark owed more than $261,757.58 plus interest, for goods that appellee shipped to it but for which it had not yet paid. Appellee's complaint stated causes of action for breach of contract, account stated and unjust enrichment against Hallmark, and for breach of contract against appellant. Specifically, appellee alleged that appellant had personally guaranteed Hallmark's debt but had failed to pay Hallmark's outstanding obligations.
 {¶ 4} In their combined answer, Hallmark and appellant admitted that they owed appellee a sum of money, but denied that it was the amount alleged in the complaint. They also admitted the allegation, in paragraph nine of the complaint, that "[appellant] executed a personal guaranty on behalf of Hallmark that personally and unconditionally guaranteed each and every obligation to [appellee] incurred by Hallmark until fully paid."
 {¶ 5} On August 25, 2005, appellee filed a motion for summary judgment. Therein, appellee argued, inter alia, that no genuine issue of material fact exists as to whether Hallmark owes the requested amount, and as to whether appellant personally and unconditionally guaranteed payment of Hallmark's debt. The trial court granted the motion. Specifically, it found that the language of the personal guaranty is clear and unambiguous and that it bound appellant to answer for the full amount of the debt that Hallmark owes to appellee. Appellant had argued that her liability was limited to $5,000 because this was the amount that she placed on a line on the first page of the credit application marked, "estimated monthly purchases." The trial court rejected this argument, finding that this was merely appellant's estimate and that nothing in the language of the agreement limited Hallmark's monthly purchases to this or any amount.
 {¶ 6} Appellant timely appealed and advances the following two assignments of error for our review:
I. THE TRIAL COURT ERRED WHEN IT GRANTED [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT WHEN IT DETERMINED THAT APPELLANT WAS PERSONALLY LIABLE FOR ALL THE OBLIGATIONS INCURRED BY HALLMARK TOWARDS [APPELLEE] PURSUANT TO APPELLANT'S PERSONAL GUARANTY.
II. THE TRIAL COURT ERRED WHEN IT GRANTED [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT WHEN IT DID NOT LIMIT APPELLANT'S LIABILITY TO THE SUM OF $5,000.00.
 {¶ 7} We begin by recalling the standards applicable to our review of a trial court's grant of summary judgment. We review the trial court's grant of summary judgment de novo. CoventryTwp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Rels. Bd.
(1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. We construe the facts gleaned from the record in a light most favorable to appellant, as is appropriate on review of a summary judgment. We review questions of law de novo. Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108,652 N.E.2d 684, citing Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992),64 Ohio St.3d 145, 147, 593 N.E.2d 286.
 {¶ 8} In support of her first assignment of error appellant argues that her affidavit, submitted with her memorandum opposing appellee's motion for summary judgment, creates a genuine issue of fact with respect to whether she intended to personally guarantee Hallmark's debt, and this issue precludes summary judgment. Specifically, in paragraph nine of her affidavit she avers that "she did not intend to become a personal guarantee (sic), did not realize she was signing such a guarantee and was shocked when named in this suit."
 {¶ 9} Appellant further argues that her intent is not apparent from the language of the credit application because that language is ambiguous. The application is ambiguous, she argues, because Hallmark is the applicant and appellant signed the application only in her representative capacity. She also argues that the application is ambiguous because it is really just anoffer to enter into a debtor/creditor relationship and does not contain specific terms of the relationship. She argues that she was only providing information and never intended to personally guarantee the future debt. Because her intent is not apparent from the document, she argues, her affidavit statement that she did not intend to guarantee the debt creates a genuine issue of material fact that precludes summary judgment.
 {¶ 10} In response, appellee argues that the language of the contract is plain and unambiguous and it clearly evidences appellant's intent to be bound as a personal guarantor. Further, appellee argues that appellant's subjective intent is irrelevant and this court should not inquire into it.
 {¶ 11} The construction of written contracts is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. "The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in the agreement." McConnell v. Hunt Sports Ent. (1999),132 Ohio App.3d 657, 675, 725 N.E.2d 1193, citing Graham v. DrydockCoal Co. (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. If a contract is clear and unambiguous, there is no issue of fact to be determined, and the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271; Alexander, supra, at 246.
 {¶ 12} Only where the language of a contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Shifrin v. Forest City Ent., Inc.
(1992), 64 Ohio St.3d 635, 597 N.E.2d 499, syllabus. These principles apply to contracts of guaranty in the same manner in which they apply to other contracts. Fifth Third Bank v.Jarrell, 10th Dist. No. 04AP-358, 2005-Ohio-1260, ¶ 12. "A guarantor is bound only by the precise words of his or her contract, but this rule does not entitle the guarantor `to demand an unfair and strained interpretation of those words' in order that the guarantor may be released from the obligation that was assumed." Ibid., quoting Morgan v. Boyer (1883),39 Ohio St. 324, 326.
 {¶ 13} Upon review of the contract at issue, we agree with the trial court's finding that the language of the personal guaranty is clear and unambiguous. Thus, the intent of the parties is evident therein, and we will not go beyond the terms in order to find ambiguity where it does not exist. Appellant agreed to "personally and unconditionally" guarantee "each and every obligation to [appellee] incurred by [Hallmark] until paid." By their ordinary meaning, these words indicate that appellant agreed to pay in full all debts that Hallmark thereafter became obligated to pay to appellee. The language of the guaranty contains no conditions precedent; no words of temporal, numerical or other limitation; and no reservation of rights. The guaranty is full and unconditional.
 {¶ 14} Appellant asks this court to disregard this clear language and find the existence of a genuine issue of material fact based upon her self-serving statement that she did not intend to personally guarantee Hallmark's debts to appellee. But, "[c]ourts must presume that the language of a contract between competent persons accurately reflects the intentions of the parties." Fairway Manor, Inc. v. Bd. of Commrs. (1988),36 Ohio St.3d 85, 87, 521 N.E.2d 818, citing Kelly v. Medical LifeIns. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. "The purpose of this presumption is to protect a right considered basic in our society: the right to freely contract. A necessary means of preserving this right is the long-standing tradition of judicial reluctance to reform or rescind a contract absent a compelling reason to do so." Ibid. Appellant's unilateral mistake is not a compelling reason to rewrite this contract. "A unilateral mistake by a guarantor as to the nature of his obligation may not relieve him from his guaranty contract." Campco Distributors, Inc. v. Fries (1987),42 Ohio App.3d 200, 537 N.E.2d 661, paragraph two of the syllabus.
 {¶ 15} For these reasons we agree with the trial court's conclusion that, by the plain language of the guaranty, appellant agreed to personally and fully guarantee each and every obligation to appellee that was incurred by Hallmark, and there remains no genuine issue of fact as to the enforceability of the guaranty. Accordingly, we overrule appellant's first assignment of error.
 {¶ 16} In support of her second assignment of error, appellant argues that the court erred when it refused to limit her liability to a maximum of $5,000. She contends that when she wrote in this amount in the space on the credit application marked "estimated monthly purchases" this was a clear indication that the amount of credit that might be extended upon approval of the application affected her intentions regarding the extent of the guaranty. She argues that when she filled in the amount of total purchases that Hallmark estimated it would make, she manifested the intention to be bound only to that extent.
 {¶ 17} For support of this proposition she directs our attention to the case of City Wide Supply, Inc. v. ProfessionalAir, Inc. (July 11, 2000), 10th Dist. No. 99AP-1152. In that case we held that a personal guarantor's liability was limited to the amount of the credit line sought and granted, and that the guarantor was not liable for additional amounts when the principal debtor was subsequently allowed to expand its account beyond the credit limit and no further guaranty was sought or obtained from the guarantor. That case is inapposite, however, because the court in City Wide relied upon the fact that when the guarantor in that case signed the guaranty the application clearly sought a specific amount of credit, and a credit line of that specific amount was later granted.
 {¶ 18} The court in City Wide specifically distinguished the facts of that case from those in a case like the present one. In City Wide we said that the case of Hughes Supply, Inc. v.Stage 1 Mechanical, Inc. (May 30, 1997), 2nd Dist. No. 1416, was different because in Hughes, like in this case, the guarantor agreed to an unconditional and unlimited guarantee to pay all indebtedness, and there was no reference to a credit limit. In fact, the Hughes court relied upon Campco, just as we do, for the proposition that when one is unilaterally mistaken as to the meaning and import of a personal guaranty, this does not relieve the signer from liability thereon.
 {¶ 19} The present case is not one in which a guarantor has agreed to become liable for the debt of another up to a specified maximum credit limit and the creditor later, without the guarantor's knowledge, extends additional credit to the debtor without obtaining further written assurance of payment from the guarantor. Appellant signed an unconditional, unequivocal, unlimited personal guaranty respecting all debts incurred by Hallmark through extension of credit by appellee. The monthly purchase estimate was just what it purported to be — an estimate — and cannot arguably represent the maximum amount that the parties understood was being personally guaranteed, as was the case in City Wide. As such, we find no error in the trial court's refusal to limit appellant's liability to the amount of the monthly purchases estimate of $5,000. Appellant's second assignment of error is overruled.
 {¶ 20} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and French, JJ., concur.