[Cite as *Stump Hill Farm, Inc. v. PFC Lamont Hill Mem. Army Navy Garrison 2003, Inc.*, 2012-Ohio-4475.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STUMP HILL FARM, INC. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | |
| PFC LAMONT HILL MEMORIAL | : | |
| ARMY NAVY GARRISON 2003, INC., | : | |
| ET AL. | : | |
| | : | Case No. 2011CA00207 |
| | : | |
| Defendants-Appellees | : | |
| | : | |
| -vs- | : | |
| | : | |
| TIMOTHY T. RHODES | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2010CV01186 |

| | |
|---|---|
| JUDGMENT: | AFFIRMED |

| | |
|---|---|
| DATE OF JUDGMENT ENTRY: | September 24, 2012 |

APPEARANCES:

| For Appellant Timothy T. Rhodes: | For Appellee Stump Hill Farm, Inc.: |
|---|---|
| WILLIAM WALKER, JR. | JOHN L. JUERGENSEN |
| P.O. Box 192 | 6545 Market Ave. N. |
| Massillon, OH 44648-0192 | North Canton, OH 44721 |

*Delaney, P.J.*

{¶1} Defendant-Appellant Timothy T. Rhodes appeals the December 16, 2010 judgment entry granting summary judgment in favor of Plaintiff-Appellee Stump Hill Farm, Inc. and the August 23, 2011 judgment entry awarding Stump Hill damages against Rhodes.

## FACTS AND PROCEDURAL HISTORY

{¶2} In September of 2003, Defendant PFC Lamont Hill Memorial Army Navy Garrison 2003, Inc. ("PFC") entered into a land contract style purchase agreement with Bambini Company, LLC for real estate located at 4713 Castlebar, NW, Canton, Ohio. PFC paid Bambini a $5,000 deposit and agreed to pay $2,500 per month for three years. At the end of the three years, there was a $500,000 balloon payment.

{¶3} In October 2006, Plaintiff-Appellee Stump Hill Farm, Inc. purchased the Castlebar property from Bambini and PFC assigned its rights to the Castlebar property to Stump Hill. Z&G Funding, LLC financed the sale of the Castlebar property. PFC entered into a five-year commercial lease agreement with Stump Hill for the Castlebar property. The sum of the lease was $210,000 or $42,000 per year and PFC was required to pay $3,500 per month through October 2011 per the terms of the lease agreement.

{¶4} On or about October 1, 2006, Defendants George Bell, Harry Kotigades, Appellant Timothy Rhodes, and Harold Young ("Guarantors") executed and delivered to Stump Hill a Guaranty Agreement whereby the principal officers of PFC personally guaranteed the payment and performance of the lease agreement between Stump Hill and PFC.

{¶5} Stump Hill filed a forcible entry and detainer action against PFC on September 17, 2008 due to PFC's failure to pay the property taxes under the terms of the lease agreement. At that time, Stump Hill terminated the lease and locked PFC out of the Castlebar property. By judgment entry dated October 1, 2008, the Stark County Court of Common Pleas denied Stump Hill's forcible entry and detainer action and permitted PFC to re-enter the property. Until September 2009, PFC continued to operate the Castlebar property.

{¶6} PFC stopped paying rent, utilities, and taxes to Stump Hill in December 2008.

{¶7} In April 2009, PFC agreed to increase the monthly rental payment to $5,500 per month, through the end of the lease agreement.

{¶8} PFC abandoned the Castlebar property in September 2009.

{¶9} Stump Hill filed a suit for damages for breach of the lease agreement against PFC and the Guarantors, based on the Guaranty Agreement, with the Stark County Court of Common Pleas on March 22, 2010. Appellant Timothy Rhodes and the other Guarantors filed answers to the complaint. Stump Hill filed a motion for default judgment against PFC on May 10, 2010. The trial court granted the motion for default judgment on May 13, 2010 and awarded damages against PFC in the amount of $212,309.75.

{¶10} PFC filed for bankruptcy protection under Chapter 11 in August 2010.

{¶11} On November 15, 2010, Stump Hill and the Guarantors filed motions for summary judgment.

{¶12} On December 17, 2010, Stump Hill and the current Board of Trustees of PFC executed a Settlement Agreement and General Release with respect to the issues raised by Stump Hill in the Chapter 11 bankruptcy. In Section 11 of the Settlement Agreement, Stump Hill released and discharged the current Board of Trustees of PFC from personal liability. The Settlement Agreement and General Release is silent as to the corporate liability of PFC or the pre-existing Guaranty Agreement.

{¶13} The trial court granted Stump Hill's motion for partial summary judgment and denied the Guarantors' motions for summary judgment on December 16, 2010. The judgment found there was no genuine issue of material fact that the terms of the Guaranty Agreement stated the Guarantors unconditionally guaranteed payment of the rent, taxes, utilities, and attorney fees if PFC breached the terms of the lease agreement by non-payment of the same. Because PFC breached the terms of the lease agreement, the Guarantors were liable for all amounts owed under the lease agreement. The trial court set the matter for a damages hearing.

{¶14} Pursuant to a damages hearing, the trial court issued its findings of fact and conclusions of law on August 23, 2011. The trial court again reviewed the terms of the Guaranty Agreement and found the Guarantors liable for full payment of all indebtedness of PFC to Stump Hill. Based on the evidence presented, the trial court concluded the Guarantors were liable for $179,119.32 under the lease agreement, $89,559.64 in attorney fees, and $350 in costs.

{¶15} Defendant-Appellant Timothy Rhodes filed his notice of appeal and raises the following arguments.

## ASSIGNMENTS OF ERROR

{¶16} Rhodes raises three Assignments of Error:

{¶17} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY ENTERING JUDGMENT AGAINST RHODES AS A SURETY WHO WAS SECONDARILY LIABLE AS A GUARANTOR AFTER APPELLEE HAD ALREADY RELEASED THE PRINCIPAL OBLIGOR FROM LIABILITY.

{¶18} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEES SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER AN ENFORCEABLE GUARANTEE AGREEMENT WAS FORMED.

{¶19} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEES SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACTS AS TO WHETHER APPELLANT'S ALLEGED OBLIGATIONS AS A GUARANTOR WERE EXTINGUISHED WHEN APPELLEE TERMINATED THE UNDERLYING LEASE."

## ANALYSIS

*I.*

{¶20} Rhodes argues in his first Assignment of Error that because Stump Hill entered into the December 17, 2010 Settlement Agreement and General Release, this discharge of liability thereby discharged the liability of the Guarantors as to the debt. Based on the terms of the Settlement Agreement and General Release and the Guaranty Agreement, we disagree.

{¶21} In support of his argument, Rhodes refers this Court to our decision in *Dressler Properties, Inc. v. Ohio Heart Care, Inc.*, 5th Dist. No. 2004CA00231, 2005-Ohio-1069. In that case, we held the discharge of the principal obligor precludes collection against the guarantor of the debt. *Id.* at ¶13. The issues in the present case, however, are not resolved by the holding of *Dressler Properties, Inc.* The terms of the Settlement Agreement and General Release and Guaranty Agreement present differing factual circumstances precluding relief from liability as found in *Dressler Properties, Inc.*

{¶22} The principal obligor in this case is PFC, as tenant under the lease agreement between Stump Hill and PFC. In order for *Dressler Properties, Inc.* to apply to this case, there must be a discharge of PFC from its obligations to pay its debts. We have reviewed the Settlement Agreement and General Release. We find the Settlement Agreement does not release or discharge from liability the corporate entity known as "PFC Lamont Hill Memorial Army Navy Garrison 2003, Inc."

{¶23} Section II of the Settlement Agreement entitled "RELEASE" states:

(a) Stump Hill, for itself and its parent corporations * * * do hereby release and forever discharge each and every individual listed in on Exhibit "A" from any and all existing charges, complaints, claims, liabilities, controversies, damages, actions, causes of action, suits, rights, demands, costs, lawsuits, debts and expenses of any nature whatsoever which have arisen since the beginning of the World, including, but not limited to, all claims alleged or that could have been

alleged in the aforementioned Stark County Case [Case No. 2010CV01186] and Chapter 11 bankruptcy filing.  * * *.

(b) The individuals listed on Exhibit "A", * * * do hereby release and forever discharge Stump Hill from any and all existing charges, complaints, claims, liabilities, controversies, damages, actions, causes of action, suits, rights, demands, costs, lawsuits, debts and expenses of any nature whatsoever which have arisen since the beginning of the World, including, but not limited to, all claims alleged or that could have been alleged in the aforementioned Stark County Case [Case No. 2010CV01186] and Chapter 11 bankruptcy filing.  * * *.

{¶24} Exhibit "A" states the names of the officers of PFC as of December 17, 2010:  Commander, Steve W. Tomko; Sr. Vice Commander, Joseph H. Pacusta; Jr. Vice Commander, Stanley Schutok; Paymaster, Bernard Puchajda; Adjutant, Michael E. Connors; Judge Advocate, John A. Turoozy; Chaplain, Steve Pruchnicki; Officer of the Day, Nathan Gobel; Office of the Watch, Barry Jacobson; Patriotic Instructor, Greg Morris; and Historian, Keith E. Panek.

{¶25} PFC, as principal obligor for the debt, was never discharged from its liability by the Settlement Agreement and General Release.  The trial court granted Stump Hill default judgment against PFC on May 13, 2010, awarding damages in the amount of $212,309.75.

{¶26} The terms of the Guaranty Agreement also permit Stump Hill to pursue the debt incurred by PFC against the Guarantors, regardless of the Settlement Agreement and General Release.  The Guaranty Agreement states in pertinent part:

[Stump Hill] is authorized, without notice or demand and without affecting the liability of either of the Guarantors from time to time to * * * (e) settle, release, compromise, collect, or otherwise liquidate the Indebtedness and any security or collateral in any manner without affecting or impairing the obligations of the [Guarantors].

{¶27} We find no error for the trial court to find the Settlement Agreement and General Release did not discharge the liability of PFC and it did not discharge the liability of the Guarantors.

{¶28} Rhodes's first Assignment of Error is overruled.

*SUMMARY JUDGMENT STANDARD OF REVIEW*

{¶29} Rhodes's next two Assignments of Error relate to the December 16, 2010 judgment entry granting summary judgment in favor of Stump Hill. We first discuss the appropriate standard of review for the related Assignments. We review a summary judgment de novo and without deference to the trial court's determination. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard of review as the trial court and conducts an independent review, without deference to the trial court's determination. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Westbrook v. Swiatek*, 5th Dist. No. 09CAE09–0083, 2011-Ohio-781, ¶ 43.

{¶30} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action,

show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

{¶31} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

*II.*

{¶32} Rhodes argues in his second Assignment of Error the trial court erred in finding that the Guaranty Agreement was a valid contract. We disagree.

{¶33} The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration. *Altek Environmental Serv. Co. v. Harris*, 5th Dist. No. 2008CA00138, 2009-Ohio-2011, ¶ 19, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 770 N.E.2d 58, 2002-Ohio-2985, ¶ 16.

{¶34} Rhodes argues his affidavit submitted in response to the motion for summary judgment creates a genuine issue of material fact as to whether there was a valid offer and acceptance on behalf of the Guarantors to enter into the Guaranty Agreement with Stump Hill. Rhodes states in his affidavit that Z&G Funding, LLC,

presented him and the Guarantors with the Guaranty Agreement. Z&G Funding, LLC would not finance the sale of the Castlebar property from Bambini to Stump Hill without the Guaranty Agreement. Rhodes stated he felt he had to sign the Guaranty Agreement or PFC would lose the property to Bambini. (Affidavit of Timothy Rhodes).

{¶35} Stump Hill presented the affidavit of Cynthia Huntsman, President of Stump Hill. She stated that she wanted a personal guaranty from the primary officers of PFC (the Guarantors) to ensure that PFC would pay the monthly mortgage to Stump Hill, which would in turn be paid to Z&G Funding, LLC.

{¶36} Based on the reading of these affidavits, this Court cannot find there was no meeting of the minds of the parties to the Guaranty Agreement as to the intent of the Guaranty Agreement to secure financing for the sale of the Castlebar property. Without the Guaranty Agreement from the primary PFC officers, PFC would not obtain financing on the sale of the Castlebar property. Rhodes argues, however, he did not intend to guarantee PFC's performance under the lease agreement.

{¶37} Stump Hill refers this Court to *Amerisourcebergen Drug Corp. v. Hallmark Pharmacies, Inc.*, 10th Dist. 05AP-1250, 2006-Ohio-2746, where the Tenth District Court of Appeals explored a similar factual pattern where a guarantor argued she did not intend to personally guaranty a corporate debt when she signed a credit application. The court reviewed the language of the personal guaranty under the law of contract construction:

> The construction of written contracts is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. "The purpose of contract

construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in the agreement." *McConnell v. Hunt Sports Ent.* (1999), 132 Ohio App.3d 657, 675, 725 N.E.2d 1193, citing *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. If a contract is clear and unambiguous, there is no issue of fact to be determined, and the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271; *Alexander,* supra, at 246.

Only where the language of a contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St .3d 635, 597 N.E.2d 499, syllabus. These principles apply to contracts of guaranty in the same manner in which they apply to other contracts. *Fifth Third Bank v. Jarrell,* 10th Dist. No. 04AP-358, 2005-Ohio-1260, ¶ 12. "A guarantor is bound only by the precise words of his or her contract, but this rule does not entitle the guarantor 'to demand an unfair and strained interpretation of those words' in order that the guarantor may be released from the obligation that was assumed." Ibid., quoting *Morgan v. Boyer* (1883), 39 Ohio St. 324, 326.

Upon review of the contract at issue, we agree with the trial court's finding that the language of the personal guaranty is clear and unambiguous. Thus, the intent of the parties is evident therein, and we will not go beyond the terms in order to find ambiguity where it does not exist. Appellant agreed to "personally and unconditionally" guarantee "each and every obligation to [appellee] incurred by [Hallmark] until paid." By their ordinary meaning, these words indicate that appellant agreed to pay in full all debts that Hallmark thereafter became obligated to pay to appellee. The language of the guaranty contains no conditions precedent; no words of temporal, numerical or other limitation; and no reservation of rights. The guaranty is full and unconditional.

Appellant asks this court to disregard this clear language and find the existence of a genuine issue of material fact based upon her self-serving statement that she did not intend to personally guarantee Hallmark's debts to appellee. But, "[c]ourts must presume that the language of a contract between competent persons accurately reflects the intentions of the parties." *Fairway Manor, Inc. v. Bd. of Commrs.* (1988), 36 Ohio St.3d 85, 87, 521 N.E.2d 818, citing *Kelly v. Medical Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. "The purpose of this presumption is to protect a right considered basic in our society: the right to freely contract. A necessary means of preserving this right is the long-standing tradition of judicial reluctance to reform or rescind a contract absent a compelling reason to

do so." Ibid. Appellant's unilateral mistake is not a compelling reason to rewrite this contract. "A unilateral mistake by a guarantor as to the nature of his obligation may not relieve him from his guaranty contract." *Campco Distributors, Inc. v. Fries* (1987), 42 Ohio App.3d 200, 537 N.E.2d 661, paragraph two of the syllabus.

*Id.* at ¶11-14.

{¶38} We likewise review the language of the Guaranty Agreement to determine whether the language of the Guaranty Agreement is clear and unambiguous to give evidence of the parties' intent. The Guaranty Agreement states:

The Guarantors jointly and severally unconditionally guarantee the full and prompt payment when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all Indebtedness of [PFC] to [Stump Hill], and the [Guarantors] further agree to pay all costs and expenses including, without limitation, all court costs and attorney fees and expenses paid or incurred in endeavoring to collect all or any part of the Indebtedness from, or in prosecuting any action against, [PFC] or one or more of the Guarantors.

{¶39} We find the language of the Guaranty Agreement is clear and unambiguous to reflect the intention of the parties that the Guarantors would unconditionally guaranty the indebtedness of PFC to Stump Hill.

{¶40} Rhodes next argues there is a genuine issue of material fact as to whether the Guaranty Agreement was supported by consideration. The facts in this case do not support Rhodes's contention.

{¶41} In 2003, PFC leased the Castlebar property from Bambini with a $500,000 balloon payment at the end of the three-year term. In 2006, PFC was unable to meet the financial obligation for the balloon payment and entered into a financial arrangement with Stump Hill, financed by Z&G Funding, LLC, to purchase the property from Bambini. As stated by Rhodes's affidavit above, he understood that if he did not enter into the Guaranty Agreement, the sale of the Castlebar property would fail and Bambini would reclaim the property. We find there is evidence in the record to show reasonable minds could only conclude the Guaranty Agreement was supported by consideration.

{¶42} Rhodes's second Assignment of Error is overruled.

*III.*

{¶43} Rhodes contends in his third Assignment of Error that when Stump Hill and PFC modified the rental payment in April 2009, this was a termination of the original lease between PFC and Stump Hill, thereby terminating the Guaranty Agreement. We disagree.

{¶44} The Guaranty Agreement states:

[Stump Hill] is authorized, without notice or demand and without affecting the liability of either of the Guarantors from time to time to (a) renew, extend, accelerate or otherwise change the time of payment of, or other terms relating to, the Indebtedness, or otherwise modify, amend or change the terms of the Term Agreement, the Lease, or any other agreement, document or instrument now or hereafter executed by [PFC]

and delivered to [Stump Hill] * * * in any manner without affecting or impairing the obligations of the [Guarantors].

{¶45} Pursuant to the language of the Guaranty Agreement, there is no genuine issue of material fact that Stump Hill and PFC could change the terms of the lease agreement through an increase the monthly rental payment without notice or consent of the Guarantors.  Further, a change in terms of the lease agreement is binding upon the Guarantors pursuant to the above-cited language of the Guaranty Agreement.

{¶46} Rhodes's third Assignment of Error is overruled.

## CONCLUSION

{¶47} The three Assignments of Error presented by Defendant-Appellant Timothy T. Rhodes are overruled.

{¶48} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

---
HON. PATRICIA A. DELANEY

---
HON. W. SCOTT GWIN

---
HON. WILLIAM B. HOFFMAN

PAD:kgb

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STUMP HILL FARM, INC.                 :
                                      :
                                      :
      Plaintiff-Appellee              :
                                      :
-vs-                                  :
                                      :    JUDGMENT ENTRY
PFC LAMONT HILL MEMORIAL              :
ARMY NAVY GARRISON 2003, INC.,        :
ET AL.                                :    CASE NO. 2011CA00207
                                      :
                                      :
      Defendants-Appellees            :
                                      :
-vs-                                  :
                                      :
TIMOTHY T. RHODES                     :
                                      :
      Defendant-Appellant             :

    For the reasons stated in our accompanying Opinion on file, the judgment of the

Stark County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

                              _____
                              HON. PATRICIA A. DELANEY

                              _____
                              HON. W. SCOTT GWIN

                              _____
                              HON. WILLIAM B. HOFFMAN