[Cite as *Great Lakes Petroleum Co., Inc. v. JBI Scrap Processors, Inc.*, 2024-Ohio-2451.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

GREAT LAKES PETROLEUM
CO., INC.,

        Plaintiff-Appellant,

        v.

JBI SCRAP PROCESSORS, INC. ET AL.,

        Defendants-Appellees.

:
:
:
:
:
:
:
:

No. 113410

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2024

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-23-975450

---

### *Appearances:*

David G. Finley, *for appellant*.

Thomas L. Colaluca, *for appellee*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant, Great Lakes Petroleum Co., Inc. ("GLP"), appeals the trial court's judgment dismissing its claim against defendant-appellee, Joseph Immormino, pursuant to Civ.R. 12(B)(6). In its sole assignment of error, GLP

contends that the trial court committed reversible error when it granted Immormino's motion and dismissed GLP's claims against him. After review, we agree with the trial court that Immormino did not personally guarantee payment to GLP. We therefore affirm the trial court's judgment.

## I. Procedural History

{¶ 2} In February 2023, GLP filed a complaint against JBI Scrap Processors, Inc. ("JBI") and Immormino, alleging that they owed GLP $218,709.93 on its account with GLP. GLP further alleged that defendants were unjustly enriched in the amount of $218,709.93 and that Immormino had personally guaranteed payment on the account. GLP attached a statement to its complaint from GLP to JBI showing a "balance due" of $218,709.93. GLP also attached a credit application from JBI to GLP that Immormino had signed as vice president of JBI on March 12, 2021.

{¶ 3} Immormino moved to dismiss GLP's claim against him, arguing that he did not personally guarantee payment on the credit application.

{¶ 4} GLP moved for default judgment against JBI.

{¶ 5} The trial court granted Immormino's motion to dismiss GLP's claim against him and granted GLP's motion for default judgment against JBI in the amount of $218,709.83, plus interest at 18% per annum from the date of judgment. GLP now appeals from the trial court's judgment dismissing Immormino from the case.

## II. Civ.R. 12(B)(6)

**{¶ 6}** A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint. *Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, ¶ 11. When reviewing a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 6. For a defendant to prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a court in granting relief. *O'Brien v. Univ. Comm. Tenants Union, Inc.*, 42 Ohio St.2d 242, 24 (1975).

**{¶ 7}** When determining whether a Civ.R. 12(6) motion should be granted, a court may look only to "'the four corners of the complaint.'" *Dabney v. Metro Appraisal Group, Inc.*, 2018-Ohio-4601, ¶ 15 (8th Dist.), quoting *Bandy v. Cuyahoga Cty.*, 2018-Ohio-3679 (8th Dist.). However, documents that are properly incorporated into the complaint may be considered in conducting a Civ.R. 12(B)(6) analysis. A "written instrument attached to a pleading becomes part of the pleading." Civ.R. 10(C). A written instrument "has primarily been interpreted to include documents that evidence the parties' rights and obligations, such as negotiable instruments, 'insurance policies, leases, deeds, promissory notes, and contracts.'" *Leneghan v. Husted*, 2018-Ohio-3361, ¶ 17, quoting *Inskeep v. Burton*, 2008-Ohio-1982, ¶ 17 (2d Dist.).

**{¶ 8}** We review an order dismissing a complaint for failure to state a claim for relief de novo. *Perrysburg Twp. v. Rossfo*rd, 2004-Ohio-4362, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480.

### III. Personal Liability

**{¶ 9}** In its sole assignment of error, GLP argues that the trial court erred when it granted Immormino's motion to dismiss GLP's claims against him in his individual capacity.

**{¶ 10}** A guaranty is a promise by one person to pay the debts of another. *Kauffman Family Trust v. Keehan*, 2013-Ohio-2707, ¶ 8 (8th Dist.), citing *Valspar Corp. v. Nguyen*, 2012-Ohio-2710, ¶ 15 (5th Dist.). Ordinarily, an officer of a corporation is not personally liable on contracts for which his corporate principal is liable. *J.D.S. Props. v. Walsh*, 2009-Ohio-367, ¶ 13 (8th Dist.). "However, if a corporate officer executes an agreement in a way that indicates personal liability, then that officer is personally liable regardless of his intention." *Spicer v. James*, 21 Ohio App.3d 222, 223 (2d Dist. 1985); s*ee also J.D.S. Props*. at ¶ 13. "Whether a note has been executed by a party in his [or her] individual or representative capacity, is a question to be determined from the consideration of the whole instrument." *Ohio Carpenters' Fringe Benefit Fund v. Krulak*, 2008-Ohio-220, ¶ 40 (8th Dist.,), citing *Aungst v. Creque*, 72 Ohio St. 551, 555 (1905).

**{¶ 11}** Courts construe a guaranty in the same manner as a contract. *Kauffman Family Trust* at ¶ 8, citing *G.F. Business Equip., Inc. v. Liston*, 7 Ohio

App.3d 223, 224 (10th Dist.1982). In interpreting contracts, the court's role is "to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis,* 2003-Ohio-5849, ¶ 11, citing *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, (1999). Where the contract terms are clear and unambiguous, we must determine the parties' rights and obligations from the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). The interpretation of a written contract is a matter of law. *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 9.

**Unambiguous Language of the Guaranty**

{¶ 12} GLP first argues that the trial court erred as a matter of law when it dismissed GLP's claims against Immormino because the language of the guaranty unambiguously bound Immormino as the guarantor of JBI's debts. GLP maintains that it does not matter how Immormino signed the document — specifically, that Immormino included his title, Vice President — because courts have held that the form of a signature is no bar to relief where the guaranty is otherwise unambiguous.

{¶ 13} Both GLP and Immormino refer to the credit application as a commercial contract. GLP's credit application is a preprinted form, which asks the company seeking credit to complete the form by answering questions on the form and providing information on blank lines on the form. On the first page of GLP's credit application, JBI listed its company name as "JBI Scrap Processors" and

checked a box that stated it was seeking credit from GLP. JBI further provided information that it is a corporation and its "nature of business" is recycling.

{¶ 14} On the second page of GLP's credit application, GLP's requested JBI's "banking and trade references," as well as its "major stockholders, officers, or owners along with address and Social Security Number." JBI provided its banking information and listed Ivette Immormino as the company's only major stockholder, officer, or owner. Following this section, GLP's credit application states:

> I AUTHORIZE GREAT LAKES PETROLEUM CO. AND/OR NORTHEAST LUBRICANTS, LTD. TO CONTACT THE ABOVE BANKS AND TRADE REFERENCES TO OBTAIN INFORMATION. I UNDERSTAND TERMS FOR PAYMENT ARE NET 10 DAYS FOR TRANSPORT LOADS, NET 30 DAYS FOR ALL TANKWAGON LOADS AND NET 30 DAYS FOR LUBRICANT DELIVERIES UNLESS OTHERWISE SPECIFIED IN WRITING. ALL ACCOUNTS NOT PAID WITHIN TERMS ARE PAST DUE AND ARE SUBJECT TO A 1.5% PER MONTH FINANCE CHARGE (18% PER ANNUM) SUBJECT TO CHANGE WITHOUT NOTICE. ALL DELINQUENT ACCOUNTS MAY BE SUBJECT TO COLLECTION PROCEDURES. APPLICANT AGREES TO PAY UPON DEMAND TO GREAT LAKES PETROLEUM CO. AND/OR NORTHEAST LUBRICANTS, LTD., THE COSTS AND EXPENSES OF COLLECTION OF AMOUNTS PAST DUE, INCLUDING FINANCE CHARGES, LEGAL EXPENSES, AND ATTORNEY FEES. AUTHORIZED SIGNER AGREES TO ANY ACCOMPANYING TERMS AND CONDITIONS OF SALE. IN ANY DISPUTE, THE APPLICANT CONSENTS TO THE EXCLUSIVE JURISDICTION OF, IN THE SOLE DISCRETION OF GREAT LAKES PETROLEUM CO. AND/OR NORTHEAST LUBRICANTS, LTD., THE STATE COURTS OF EITHER CUYAHOGA COUNTY, OHIO, MECKLENBURG COUNTY, NC OR GWINNETT COUNTY, GA. *THE UNDERSIGNED UNCONDITIONALLY GUARANTEES THE FULL AND TIMELY PAYMENT WHEN DUE OF ALL THE OBLIGATIONS OF THE ABOVE-REFERENCE APPLICANT COMPANY DUE AND OWING TO GREAT LAKES PETROLEUM CO. AND/OR NORTHEAST LUBRICANTS, LTD.*

(Emphasis added to highlight the guaranty provision at issue in this case.)

{¶ 15} Below this paragraph is the signature line. Authorized Signature, Title, Printed Name, and Date appear to be preprinted on GLP's credit application. The completed application states as follows:

Authorized Signature: [Immormino's signature] Title: Vice President

Printed Name: Joseph Immormino                 Date: 03/12/2021

{¶ 16} In support of its argument that Immormino is personally liable on JBI's account because the plain language of the guaranty unambiguously states that the person signing the agreement would be personally liable, GLP cites to *Starlion Electronics Distrib., L.L.C. v. Zoran Med., L.L.C.*, 2023-Ohio-2876 (8th Dist.). In *Starlion*, the parties had entered into a settlement agreement whereby Zoran Medical ("Zoran") agreed to refund over $400,000 to Starlion Electronics Distribution ("Starlion"). The settlement agreement included the following guaranty provision:

> PERSONAL GUARANTEE: The representative for the Seller, Yin Lin, personally and individually guarantees unconditionally full and prompt payment of past, present and future obligations under this Agreement for the Applicant and any successor in interest, corporate or non-corporate, in the Applicant's business.

*Id*. at ¶ 14.

{¶ 17} Lin signed the agreement "for Zoran Medical L.L.C." *Id*. at ¶ 5. Below her signature, there is language stating that Lin signed in her capacity as "partner"

of Zoran. *Id.* After Zoran breached the settlement agreement, Starlion filed a complaint against Zoran and Lin. The trial court found that Zoran and Lin were jointly and severally liable to Starlion for breach of the agreement. *Id.* at ¶ 8. In affirming the trial court, this court explained that

> the plain and unambiguous language of the contract evidences a clear intent to hold Lin individually liable on the personal guaranty. The contract plainly states: "The representative for the Seller, Yin Lin, personally and individually guarantees unconditionally full and prompt payment of past, present and future obligations due under this agreement[.]" To conclude that the title "partner" on the signature line precludes a finding of individual liability for the personal guaranty would invalidate a clear and unambiguous term of the parties' contract. The terms of the contract are clear, and the fact that Lin signed the agreement as a "partner" does not render the personal guaranty ambiguous.

*Id.* at ¶ 18.

{¶ 18} We disagree with GLP that *Starlion* supports its position that the guaranty in this case clearly and unambiguously imposed personal liability on the person signing the agreement. The guaranty in *Starlion* is prefaced by the words, "PERSONAL GUARANTEE," which are all in capital letters. *Id.* at ¶ 4. The guaranty in *Starlion* then "plainly states: 'The representative for the Seller, Yin Lin, personally and individually guarantees unconditionally full and prompt payment of past, present and future obligations due under this agreement[.]'" *Id.* at ¶ 18. Unlike the guaranty in *Starlion*, however, the guaranty here does not contain any language indicating that the person signing the agreement would be personally guaranteeing the debt of the principal.

{¶ 19} GLP cites to several other cases for this same proposition, i.e., that the language of the guaranty clearly and unambiguously established that the person signing the agreement was personally guaranteeing the debt. But again, each of these cases is distinguishable from the present case for the same reason *Starlion,* 2023-Ohio-2876 (8th Dist.), is, namely, that the guaranty contained language explicitly stating that the person signing the agreement would be personally guaranteeing the debt. *See Amerisourcebergen Drug. Corp. v. Hallmark Pharmacies, Inc.*, 2006-Ohio-2746, ¶ 2 (10th Dist.) (guaranty stated that the undersigned "personally and unconditionally guarantees each and every obligation" of the applicant); *Wells Fargo Bank, NA v. WSW Franchising, Inc.*, 2009-Ohio-3845, ¶ 11 (10th Dist.) ("the signer(s) . . . in their individual capacities jointly and severally unconditionally guarantee and promise to pay upon demand to Bank, all indebtedness of the company named above"); *Wholesale Builders Supply v. Green-Source Dev., L.L.C.*, 2013-Ohio-5129, ¶ 2 (8th Dist.) ("by signing this agreement you are both personally and corporately liable for the total of purchases"). Again, the guaranty in this case does not state that the signer would be personally responsible for the company's debt.

{¶ 20} GLP further points to other factors that it claims establish that the guarantee unambiguously imposed personal liability on the signer. GLP claims that because it asked for social security numbers of all major principals of the company on the application, the signer was on notice that GLP intended to impose personal

responsibility for the debt. GLP also argues that because the paragraph in which the guaranty is found begins with "representations in the first person," it clearly meant the signer would be taking personal responsibility for the business applicant. Finally, GLP contends that the language "clearly creates an obligation to pay the debt of another." GLP does not cite to any cases to support these arguments. We disagree that these factors indicate that the signer would be personally liable for the applicant company's debt.

{¶ 21} We therefore disagree with GLP that the guaranty in its credit application clearly and unambiguously imposed liability on Immormino. Indeed, "[w]hether a note has been executed by a party in his individual or representative capacity, is a question to be determined from the consideration of the whole instrument." *Ohio Carpenters' Fringe Benefit Fund*, 2008-Ohio-220, at ¶ 40 (8th Dist.), citing *Aungst*, 72 Ohio St. at 555.

**Form of Signature**

{¶ 22} GLP further argues that the form of Immormino's signature failed "to indicate an exclusively representative capacity." Specifically, GLP maintains that by merely adding his title, Vice President, without specifically referencing the principal for which he was signing as an agent, Immormino cannot avoid personal liability.

{¶ 23} In support of this argument, GLP cites to *George Ballas Leasing, Inc. v. State Sec. Serv., Inc.,* 1991 Ohio App. LEXIS 6346 (6th Dist. Dec. 31, 1991). GLP claims that Immormino's signature failed to pass the *George Ballas* three-pronged

test, which was used by the Sixth District to determine whether an individual was acting as an agent.

{¶ 24} In *George Ballas*, State Security Service entered into a commercial lease agreement with George Ballas Leasing. The lease agreement contained a section captioned, "Guarantee of Performance," which stated, "the undersigned absolutely and unconditionally guarantees the * * * performance of all the conditions * * * contained in the hereinabove lease agreement[.]" *Id.* at 2. The president of State Security Service signed the guaranty as "Donald Johnson, President." *Id.* at 3. The Sixth District was asked to determine whether Johnson, by affixing his corporate title to his signature, expressed an unambiguous intention to bind the corporation of which he was an agent or bind himself individually. *Id.* at 4.

{¶ 25} The Sixth District explained in *George Ballas* that "[w]hether a corporate officer has effectively indicated that his signature is not indicative of his individual obligation depends upon the form of the promise and the form of the signature." *Id.* at 5, citing *Spicer*, 21 Ohio App.3d 222, 487 N.E.2d 353. The court explained that "the analysis of the form of the promise involves an examination of the consistency of the language of the body of the agreement with the gender and tense of the signature. Inconsistency in this respect demands further inquiry." *Id.* at 5-6. With respect to "form of signature," the court stated:

> The signature itself represents a clear indication that the signator is acting as an agent if[:] (1) the name of the principal is disclosed, (2) the signature is preceded by words of agency such as "by" or "per" or "on

behalf of", and (3) the signature is followed by the title which represents the capacity in which the signator is executing the document, e.g., "Pres." or "V.P." or "Agent."

*Id.* at 6.

{¶ 26} In analyzing the guaranty in *George Ballas*, 1991 Ohio App. LEXIS 6346, the court explained that "the language of the 'Guarantee of Performance' clause consist[ed] of standard preprinted text which is both gender and tense neutral; therefore, there [could] be no inconsistency between the form of the promise and the signature." *Id.* at 6-7. The court further noted that "[t]he signature itself follow[ed] the preprinted word 'by' and [was] followed by the word 'president.'" *Id.* at 7. And "[t]he corporation of which appellee Johnson [was] president [was] typed both on the document's face and immediately below the lessee's signature line on the back page." *Id.* The court concluded that the subject agreement did not express an intent to hold the president personally liable, explaining "that there was no ambiguity as to what entity was the principal herein, that there was no inconsistency between the language of the guaranty clause and the signature, and that appellee Johnson satisfied the formality required to show his intention to be only a signatory as agent of another." *Id.* at 7-8.

{¶ 27} Just as in *George Ballas*, the guaranty here did not identify the guarantor by name. Instead, the guarantor is identified as "the undersigned." The credit application then states, "Authorized Signature:" and provided a blank space for a signature. Beside "Authorized Signature," the application's preprinted form

states, "Title:", and then another blank space is provided for the signer to complete. Underneath "Authorized Signature," the credit application states, "Printed Name:" and "Date:", both with blank spaces provided beside them.

{¶ 28} Although Immormino's signature is not preceded by words of agency such as "by" or "per" or "on behalf of," it is preceded by the words "Authorized Signature." The words "Authorized Signature" do not indicate that GLP intended to hold the "authorized" signer personally liable. Rather, "Authorized Signature" indicates that GLP intended for someone who was authorized by JBI to execute the credit application to bind JBI to the terms of the application. *See Fuller & Assocs. v. Heil Windermere Moving & Storage Co.*, 2005-Ohio-2599, ¶ 25 (5th Dist.) (Court found "the phrase 'authorized signature' coupled with the disclosed principal's name [was] a clear indication Kubec signed as the agent of the prospective buyer group.").

{¶ 29} Furthermore, Immormino's signature is followed by his title, "Vice President." Although Immormino did not include the principal by his signature, the principal is clearly identified on the face of the contract, just as in *George Ballas*. We therefore conclude, as the Sixth District did in *George Ballas*, 1991 Ohio App. LEXIS 6346, that Immormino satisfied the formality required to show that he intended to sign as an agent of JBI rather than be personally liable for JBI's debts. Again, we look to the entire contract to determine the intent of the parties. And in looking at the contract as a whole in this case, we conclude that the trial court did not err when it granted Immormino's motion to dismiss GLP's claims against him.

**Parol Evidence**

{¶ 30} GLP alternatively argues that if Immormino's "signature is deemed to have created an ambiguity about whether [he] signed solely as a representative of JBI," then Civ.R. 12(B)(6) was not appropriate because it would be entitled to prove its case by parol evidence. We did not, however, determine that the contract was ambiguous. Therefore, we do not need to address this argument.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR